**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Leonard Pivnick,

    Plaintiff,　　　　　　　　　　　　　　　Case No. 1:05cv580
v.　　　　　　　　　　　　　　　　　　　　　Judge Michael R. Barrett

White, Getgey & Meyer Co., LPA., et al.,

    Defendants/Third Party Plaintiffs,
v.

Angela M. Roper, Esq., et al.

    Third Party Defendants.

## **ORDER**

This matter is before the Court pursuant to the following pending motions:

1. Motion to Dismiss Third Party Complaint (Doc. 15), Third Party Plaintiffs filed a memorandum in opposition (Doc. 23), Third Party Defendant filed a reply (Doc. 27).  By agreement of the parties this motion to dismiss was converted into a motion for summary judgment. (See minute entry of August 8, 2006). Additional pleadings were then filed. (Docs. 52, 55 and 57).

2. Motion for Summary Judgment filed by Defendants (Doc. 53), Plaintiff filed a memorandum in opposition (Doc. 56), Defendants filed a reply in support (Doc. 58).

3. Defendants filed a Motion to Strike the Affidavit and Exhibits of Gregory Keyser that are attached to the Response in Opposition to the Motion to for Summary Judgment field by Plaintiff (Doc. 59).  Plaintiff filed a memorandum in opposition (Doc. 60).  Defendants replied (Doc. 61).

The pending motions have been fully briefed and are ripe for review.

I.   Background and Procedural History

Plaintiff filed a legal malpractice suit against White, Getgey & Meyer Co., LPA, David P. Kamp, L. Beth Zahneis, and Carl J. Stich, Jr. (collectively, "White Getgey" unless otherwise indicated). On June 25, 2001, Plaintiff Pivnick ("Pivnick") hired White Getgey as successor counsel to represent Pivnick in the lawsuit *Leonard Pivnick v. Fasig-Tipton Co., et al.* ("*Fasig-Tipton*" or the "underlying case") (Doc. 28-2 at 4). *Fasig-Tipton* was pending in state court in Lexington, Kentucky and was an action to recover damages arising out of the repossession and sale of a bay filly won at auction by Pivnick on Aug. 5, 1997 at the Fasig-Tipton Saratoga Yearling Sale. (Doc. 53, Exh. 5).

Pivnick paid White Getgey a $15,000 retainer and signed a contingency fee agreement. (Doc. 4. at 12). Defendant David Kamp ("Kamp") of White Getgey initially assigned the case to Defendant Carl Stich ("Stich") of White Getgey. (Kamp Depo., p 16). Stich joined White Getgey in the summer of 2001 and left taking a position at the Hamilton County Prosecutor's Office on Nov. 1, 2003. (Stich Depo., p 14). Stich believed that all his cases would be assigned to another attorney by White Getgey. *Id*. at 34-35, 81-82. Based on this belief, Stich sent no correspondence to Pivnick indicating Stich was leaving White Getgey. *Id*. Stich remained "of counsel" at White Getgey and checked his mail approximately once a week. *Id*. at 49.

At some point during July, 2004, Stich received a letter at White Getgey from the Fayette County Circuit Court indicating the need to show cause as to why no pretrial step had been taken in the past year or the *Fasig-Tipton* case would be dismissed. *Id*. at 50.

Stich immediately gave the notice to Kamp informing him that someone needed to cover the matter. *Id*. at 51.

Kamp does not recall and does not deny receiving the notice from Stich. (Kamp Depo. p 36). Kamp claims he does not doubt that Stich gave the notice to him. *Id*. at 40. Further, Kamp admits it was his responsibility to handle the matter and that Stich could not handle it because of possible conflicts of interest with the County Prosecutor's Office. *Id*. at 40. Kamp further claims the dismissal hearing may have been on his, "calender and deleted or it wasn't," or that he forgot about it. *Id*. at 26, 47-48. Kamp also claims that the dismissal notice did not hit his "radar" and that is why he did not inform Pivnick or Roper. *Id*. at 36. Because White Getgey failed to prosecute the claim for one year and failed to appear at the hearing, the action was dismissed by the Fayette County Circuit Court. (Doc. 4 at 13). White Getgey received a 30 day notice from the court warning of the pending dismissal and failed to take action to stop the dismissal. *Id*. at 15. Kamp, through Defendant Beth Zahneis ("Zahneis"), attempted to have the dismissal set aside and in the motion to set aside the dismissal claimed that he was in court the entire month of August and that is why he missed the notice to show cause hearing. *(*Kamp Depo., p 47). This attempt was not successful. (Doc. 4 at 16). The dismissal was a final judgement. (Id. at 17).

Almost all communication between White Getgey and Pivnick occurred through Third Party Defendant, Angela Roper ("Roper"). (Doc. 12 at 5; Doc. 23 at 2, Exh. B). White Getgey alleges Roper was Pivnick's personal counsel. (Doc. 22, ¶3). Pivnick employed Roper as his office manager from approximately 1977 to 2001. (Doc. 15 at 3; Doc. 16).

Plaintiff employed Roper full-time even through college and law school. *Id*. After Roper passed the New Jersey bar in 1988, she continued to work as Pivnick's office manager and practiced law part-time. *Id*. Roper quit working for Pivnick in 2001, when she formed Roper & Twardowsky, LLC and began practicing law full-time. *Id*.

Roper was employed as Pivnick's office manager when Pivnick purchased the bay filly at issue in the *Fasig-Tipton* case. (Doc. 15 at 4). Roper did not assist Pivnick in retaining the predecessor counsel to White Getgey in the *Fatig-Tipton* case, but did refer Pivnick to White, Getgey. *Id*. Although Roper is a licensed attorney in New Jersey, Roper and Pivnick claim that Roper was never Pivnick's attorney in the *Fasig-Tipton* litigation, never had a legal fee arrangement with Pivnick and only acted as Pivnick's office manager in dealing with White Getgey. (*Id*.; Doc. 28).

II. Motion to Strike

Pivnick attached the Affidavit of Gregory A. Keyser, Esq., along with three letters written by Mr. Keyser, to his memorandum in opposition to Defendants' motion for summary judgment. (Doc. 56, Exhibit 1, 1-A, 1-B, 1-C). Mr. Keyser was asked, presumably by Plaintiff, to render opinions relating to the professional standard of care owed by attorneys to clients as well as the merits of the *Fasig-Tipton* litigation. (Id. at ¶¶3-4). White Getgey has moved to strike this affidavit and the attached exhibits. In its motion White Getgey only specifically references Exhibit 1-C. However, in its reply, White Getgey asserts that Exhibit 1-A and 1-B have no relevance to the pending motion for summary judgment.

It is well settled law that "[e]xpert opinions which express a legal conclusion are not

4

admissible." *North River Ins. Co. v. Reinsurance Corp.*, 197 F. Supp. 2d 972, 980 (S.D. Ohio 2002). The Court explained that "testimony containing a legal conclusion is inadmissible because it is not helpful to the jury and conveys legal standards to the jury, thereby invading the province of the court to determine applicable law and to instruct the jury as to that law." *Id*. at 981. See also *Berry v. City of Detroit,* 25 F.3d 1342, 1353-1354 (6th Cir. 1994). Thus, Exhibit 1-C will not be permitted.

However, the Affidavit and Exhibits 1-A and 1-B will not be stricken at this time. Expert testimony is required to establish the professional standards of performance. "The case law makes clear that the purpose of expert testimony is to guide the jury as to the relevant standard of care in the profession, based on rules and codes of professional responsibility. (Internal cites omitted). The expert explains what the attorney's duties were to his client and what might constitute a breach of that duty." *Innes v. Howell Corp.,* 76 F.3d 702, 711 (6th Cir. 1996).

Thus, the Court GRANTS Defendant's motion, in part, and DENIES it, in part. Exhibit 1-C is hereby STRICKEN.

III.     Defendants' Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of

production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

    A.    Choice of Law

When confronted with a choice of law issue in a tort action, Ohio courts look to the Restatement (Second) of Conflicts. *Morgan v. Biro Mfg. Co., Inc.*, 15 Ohio St.3dd 339, 342 (1984). The General Principal, as set forth in the Restatement, is found in Section 145 which provides that the rights and liabilities of parties to a tort action are determined by the law of the state with the most significant relationship to the occurrence and the parties. See *Bowman v. Koch Transfer Co.*, 862 F.2d 1257, 1259 (6th Cir. 1988). The Restatement then provides for particular torts. Of relevance to this matter is Section 159, "Duty Owed Plaintiff." Section 159 states that "the law selected by the application of the rule of §145 determines whether the actor owed a duty to the injured person and whether this duty was violated. The applicable law will usually be the local law of the state where the injury occurred."[1]

Section 145 states the following:

    (1) The rights and liabilities of the parties with respect to an

---

[1] It is undisputed, for purposes of this pending motion, that White Getey, as Pivnick's counsel, owed Pivnick a duty.

>issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
>(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
>(a) the place where the injury occurred,
>
>(b) the place where the conduct causing the injury occurred,
>
>(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>
>(d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) Of Conflicts § 145 (1971).

Section 6, Choice-Of-Law Principles, states the following:

>(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
>(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>
>>(a) the needs of the interstate and international systems,
>>
>>(b) the relevant policies of the forum,
>>
>>(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>>
>>(d) the protection of justified expectations,
>>
>>(e) the basic policies underlying the particular field of law,
>>
>>(f) certainty, predictability and uniformity of result, and
>>
>>(g) ease in the determination and application of the law to be applied.

Restatement (Second) Of Conflicts § 6 (1971).

The Ohio Supreme Court has applied the factors set forth in §6 as essentially a fifth element to §145. Specifically, "any factors under Section 6 which the court may deem relevant to the litigation. ..." *Morgan v. Biro Mfg. Co.,* 15 Ohio St. 3d at 342.

Pivnick argues that Ohio law should apply because Ohio is the location the contract for representation was entered into. (Doc. 53) Pivnick argues that there are different types of torts and that unlike other torts where the place of the injury controls; in malpractice torts the location of entering into the contract should control. *Id.* In support of this argument, Pivnick cites *Abbo v. Perkins*, 2007 Ohio App. LEXIS 1405 (Ohio App. 2007). Pivnick claims that Ohio law applied to interpretation of an insurance contract entered into in Ohio, even though the tort occurred in Michigan. Pivnick fails to inform the court that *Abbo* decided Ohio had a more significant interest because all the parties were located in Ohio. *Id*. citing *Callis v. Zilba*, 136 Ohio App. 3d 696, 699 (Ohio Ct. App. 2000) (The domicile of all the parties, the injured party and the drivers of the vehicles, is Ohio. These factors overcome the presumption that the law of the place where the injury occurred controls, Michigan, and Ohio law was applied.)

    1. The place where the injury occurred.

Kentucky is the place where the injury occurred and gave rise to Pivnick's claims against White Getgey. As set forth in §159, "the applicable law will usually be the local law of the state where the injury occurred," i.e., Kentucky. Under the Restatement analysis, this factor is to be considered in conjunction with the other factors to determine if Ohio has a more significant interest.

    2. The place where the conduct causing the injury occurred.

8

The conduct causing the injury occurred in Kentucky. The underlying litigation, the *Fasig-Tipton* case, was dismissed in Fayette Circuit Court, Fourth Division, Lexington Kentucky. Kentucky is the location White Getgey was to show cause why the *Fasig-Tipton* case should not be dismissed. The underlying case was dismissed because White Getgey did not comport to Kentucky Rules of Civil Procedure.

3. The place of incorporation and place of business of the parties.

The Plaintiff Pivnick and Third Party Defendant are domiciled in New Jersey and White Getgey is domiciled in Ohio. This factor weighs minorly in favor of Ohio. But does not weigh as powerfully as it did in *Abbo*, *supra*, because all the parties are not domiciled in Ohio. In addition, the individual Defendants are licensed to practice law in Kentucky.

4. The place where the relationship, if any, between the parties is centered.

It is this factor that weighs most in favor of applying Ohio law. The relationship between the parties was centered principally in Ohio. This is the location of White Getgey's place of business and the location of the majority of correspondence between Pivnick and White Getgey. Further, Ohio does have an interest in the activities of lawyers located within its state.

5. Section 6

In considering the relevant factors of Section 6, it is of clear importance for states to have an interest in the attorneys that are licensed to practice law in those states. Obviously since the individual defendants are licensed in both Ohio and Kentucky both states would have an interest. However, since the actions that occurred in the underlying

matter occurred in a Kentucky court, the scale tilts toward Kentucky law.  In addition, the underlying matter involved the sale of a thoroughbred horse by a Kentucky based auction house.

Thus, after examining the factors above, the Court finds that Ohio does not have a more significant interest to rebut the place of injury.  Kentucky law will control as Kentucky was the location of the underlying litigation and the location of the injury.

B.     Legal Malpractice

Under persuasive Kentucky law, a plaintiff with a legal malpractice claim has the burden of proving "1) that there was an employment relationship with the defendant/attorney; 2) that the attorney neglected his duty to exercise the ordinary care of a reasonably competent attorney acting in the same or similar circumstances; and (3) that the attorney's negligence was the proximate cause of damage to the client." *Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003) *citing Stephens v. Denison*, Ky.App., 64 S.W.3d 297, 298-99 (2001).  "Based on these factors, a legal malpractice case is a 'suit within a suit'." *Marrs*, 95 S.W.3d at 860 *citing Ronald E. Mallen & Jeffrey M. Smith*, Legal Malpractice, § 33.8 (5th ed. 2000).  "To prove that the negligence of the attorney caused the plaintiff harm, the plaintiff must show that he/she would have fared better in the underlying claim; that is, but for the attorney's negligence, the plaintiff would have been more likely successful." *Marrs*, 95 S.W.3d at 860.  Thus, Pivnick must prove that he would have been more than likely successful in *Leonard Pivnick v. Fasig-Tipton Co., et al.*

We may assume malpractice on the part of the defendants but every malpractice

10

action does not carry with it a right to monetary judgment. It is the law that a malpractice action against an attorney cannot be established in the absence of a showing that his wrongful conduct has deprived his client of something to which he would otherwise have been entitled. *Mitchell v. Transamerica Ins. Co.*, 551 S.W.2d 586, 588 (Ky. Ct. App. 1977) (No damage because the client still had right to sue in federal court.)

In White Getgey's motion for summary judgment, they do not dispute that they were employed by Pivnick or that they fell below the standard or care for a reasonably competent attorney. White Getgey only disputes the third element of the test, that Pivnick would not have been more likely than not successful on the *Fasig-Tipton* case. Thus, the court will only examine the third element.

There has been some discussion in the briefs as to whether Kentucky or New York law applied to the *Fasig-Tipton* case. Plaintiff's amended complaint in this matter asserts that the underlying case was one to recover damages under the Uniform Commercial Code. (Doc. 4, ¶10). This Court will not spend time on this issue at this time as both states have adopted the Uniform Commercial Code.

White Getgey next argues that the underlying case had no merit and thus, that Plaintiff was not damaged by the dismissal of that case. White Getgey then sets forth its theory of why the underlying case had no merit.[2] However, Plaintiff accurately points out that White Getgey did agree to represent Plaintiff in the Kentucky litigation and even went so far as to state "we believe that Mr. Pivnick has a legitimate UCC claim arising out of the repossession and private sale of the bay filly he purchased at the Fasig-Tipton Saratoga

---

[2]Presumably the same arguments made by Fasig-Tipton.

Yearling Sale on August 5, 1997" (Doc. 56, Exh. 2) and that "our arguments have legal merit..." (Doc. 56, Exh. 4). The Court finds that material questions of fact exist that must be decided by a jury.[3]

Thus, the motion for summary judgment of Defendant of White, Getgey & Meyer Co., LPA, Carl J. Stich, Jr., David P. Kamp, and L. Beth Zahneis is DENIED.

  IV. Motion for Summary Judgment of Angela M. Roper and Roper & Twardowsky, LLC

Angela Roper and her firm Roper & Twardowsky, LLC (collectively, "Roper") moved for summary judgment[4] arguing that White Getgey's third party complaint was filed out of time without leave of court, that the third party complaint fails to state a claim against Roper since White Getgey did not allege that Roper owed any duty to White Getgey which can form the basis of its contribution and indemnification claims, and that this Court lacks personal jurisdiction over Roper. White Getgey does not address the filing out of time argument but instead focuses its argument on the establishment of jurisdiction and that they are entitled to contribution and indemnification under Ohio law or apportionment under Kentucky law.

As previously stated, Kentucky law applies to this legal malpractice action. As such, the Court will examine White Getgey's argument that it is entitled to apportionment from

---

[3]In further support of this finding, the Court notes that the state court judge who was presiding over the underlying case denied a motion for summary judgment because questions of fact existed. (Stich Depo., p28; Roper Depo., p41).

[4]As previously stated, Roper filed a motion to dismiss which the Court converted to a motion for summary judgment.

12

Roper under Kentucky law.[5] See KRS §411.182. "Negligence of a second attorney would not relieve the first attorneys who were also negligent from the consequences of their wrongdoing." *Michels v. Sklavos*, 869 S.W.2d 728, 732 (Ky. 1994). It does not qualify as an intervening cause or superseding cause if it is simply one of the "collective. . .causes for which it ['the law'] lays responsibility." *Id*. citing *House v. Kellerman*, Ky., 519 S.W.2d 380, 382-383 (1975). The question of the additional responsibility of the second attorney, if any, raises a question of contribution or indemnity. *Michels*, 869 S.W.2d at 732.

KRS 412.030 allows for contribution among tortfeasors, "where the wrong is a mere act of negligence and involves no moral turpitude." *Degener v. Hall Contr. Corp.*, 27 S.W.3d 775, 779 (Ky. 2000). The enactment of this statute permits one who has satisfied a negligence claim to assert a claim for contribution in a separate action or in the same action by way of a cross claim or third party complaint against a joint tortfeasor. *See Consolidated Coach Corp. v. Burge*, 245 Ky. 631, 54 S.W.2d 16 (1932) and Kentucky Civil Rule 13.07; 14.01.

Unlike the right to contribution, the right to indemnity is of common law origin and is available to one exposed to liability because of the wrongful act of another with whom he is not in pari delicto. *Gookin v. Altus Capital Ptnrs,* 2006 U.S. Dist. LEXIS 12980, 12-13 (D. Ky. 2006) citing *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky. 2000). Where someone other than the defendant was the active wrongdoer and the defendant's

---

[5]White Getgey does set forth an argument as to contribution under Ohio law in its memorandum. Unfortunately, White Getgey did not proof read its brief and left out the section discussing Kentucky law and apportionment. See Doc. 55, p6. Mistakes happen but the irony of this occurring in a legal malpractice case is not lost on the Court.

liability arises because he failed to prevent or correct that wrong, then the wrongdoer can be impleaded for indemnification. *Id.*

In this case, the Court finds that White Getgey is not entitled to contribution, indemnity or apportionment. Both White Getgey and Roper spend significant time arguing whether or not Roper represented Plaintiff in the underlying matter. The court does not find this issue to be imperative. Even if Roper were co-counsel with White Getgey, the evidence before the Court is clear, Roper is not a joint tortfeasor. Roper was not admitted to practice law in Kentucky. (Roper Deposition, p17). Roper was not listed on the pleadings as co-counsel. Only Carl Stich of White Getgey was listed as counsel of record. (Kamp Depo., Exh. 2 and 3). More telling, is that she was a fact witness in the underlying case. (Roper Depo., p 123). The show cause order was mailed to Stich at White Getgey and not to Roper. (Stich Depo., p 50 and Exh. 4; Roper Depo., 124-125). Most importantly to this Court, no attorney associated with White Getgey, the only counsel of record, appeared at the hearing which led to the dismissal of the underlying case. (Kamp Depo., p 26, 31 and Exh. 3, 4). There is no dispute that White Getgey should have appeared at that hearing, not Roper. (Stich Depo., p 115).

White Getgey argues that Roper would not agree to set a trial date and that is why nothing happened on the case. Even assuming that is true, over one year had passed between communications with Roper and White Getgey. As counsel of record, it was solely White Getgey's duty to move the case along and prevent it from being prematurely dismissed.

Thus, the motion for summary judgment of Third Party Defendant Roper is hereby

GRANTED. Angela Roper and Roper & Twardowsky, LLC shall be terminated as parties in this matter.

V.     Conclusion

The Motion to Dismiss the Third Party Complaint/Motion for Summary Judgment of Third Party Defendant (Doc. 15) is hereby GRANTED. The Motion for Summary Judgment filed by Defendants (Doc. 53) is hereby DENIED. The Defendants' Motion to Strike the Affidavit and Exhibits of Gregory Keyser (Doc. 59) is GRANTED, in part, and DENIED, in part.

**IT IS SO ORDERED**.

```
                              s/Michael R. Matthew
                              Michael R. Barrett, Judge
                              United States District Court
```